IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   14-cv-1946-WYD-MJW

CHRISTINA SALYARDS,

    Plaintiff,

v.

FRANK A. SELLERS;
FEDEX GROUND PACKAGE SYSTEM, INC.;
KBT TRANSPORTATION, INC.,

    Defendants.

---

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

I.    INTRODUCTION AND BACKGROUND

THIS MATTER is before the Court on the Defendants' Motion for Partial Summary Judgment or Summary Judgment (ECF No. 41), filed on July 15, 2015.  The matter is fully briefed.

This action arises from an automobile collision that occurred in the early morning hours of September 29, 2012.  Defendant Sellers ("Sellers") was driving a tractor trailer eastbound on Interstate 76 near E-470 in Colorado when, ahead in the distance, he saw another eastbound motorist crash into the guardrail.  Def.'s Motion, p. 2.  As a result of the impact, the guardrail was peeled back from its position and was protruding into the right hand lane of the highway.  *Id.*  Sellers stopped his tractor trailer in the right hand lane of the highway in close proximity to the protruding guardrail.  *Id.*  Defendants assert that Sellers turned on his emergency flashers and called 911.  *Id.*  Defendants do not dispute that Sellers did not set out flares or reflective signs.  Approximately two minutes

into the 911 call, Seller's tractor trailer was hit from behind by Plaintiff. *Id.* at 2-3. Plaintiff had been traveling eastbound on Interstate 76 at approximately 75 miles per hour, which she states was the posted speed limit for that zone. Pl.'s Response, p. 3. As a result of the collision, Plaintiff was ejected from the vehicle, was later airlifted from the scene to an area hospital, and was treated for severe injuries. Def.'s Motion, Ex. 4, Police Report. Plaintiff admitted in a deposition that her memory of the collision was lacking, and that she could not "a hundred percent, say what happened." Def.'s Motion, Ex. 3, Salyards Deposition.

Plaintiff filed this action on July 14, 2014, asserting claims against Sellers for both negligence and negligence *per se*, negligent training/supervision and *respondeat superior* against both Defendants KBT Transportation ("KBT") and FedEx Ground Package System ("FedEx"), and negligent selection of independent contractor against FedEx. The parties do not dispute that Sellers' tractor trailer was owned by KBT. They also do not dispute that FedEx contracted with KBT to provide services to FedEx. However, Defendants dispute Plaintiff's allegation that Sellers was an employee or contractor of KBT at the time of the incident, and that Sellers was hauling FedEx packages at that time. Compl., ¶ 7; Answer, ¶ 7.

Plaintiff contends that Sellers "operated the vehicle in his charge in a reckless, careless, and negligent manner," and "failed to take the proper steps to ensure that the traffic behind him could tell that a truck was stopped in the middle of the highway at night," arguing that "Sellers failed to turn on warning lights, flashing lights, or put out any sort of road flares, reflective signs or anything else to indicate that he was at a complete stop in the middle of the highway." Compl., ¶¶ 6, 14. Plaintiff argues that Sellers

"lacked the knowledge and skill ordinarily possessed by other skilled truck drivers in preventing, identifying, and avoiding injury to the motoring public" because both KBT and FedEx failed to train Sellers "in the proper performance of job responsibilities, the proper knowledge of trucking guidelines and procedures and the proper rules and regulations promulgated by state and federal laws." *Id.* at ¶¶ 8-10.

Defendants argue that in cases of a rear-end collision, a rebuttable presumption of negligence is raised against the driver in the rear, and that Plaintiff has not provided enough evidence to rebut that presumption. Defendants argue that in light of this presumption, they are entitled to either summary judgment on all of Plaintiff's claims, or partial summary judgment finding the Plaintiff partially negligent for the collision. Plaintiff argues that the presumption of negligence does not apply in this case, and that genuine issues of material fact remain which preclude summary judgment.

II.     STANDARD OF REVIEW

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that might affect the outcome

of the dispute under the applicable law. *Ulissey v. Shvartsman,* 61 F.3d 805, 808 (10th Cir. 1995). I must construe all inferences in favor of the party against whom the motion under consideration is made. *Pirkheim v. First Unum Life Ins. Co.,* 229 F.3d 1008, 1010 (10th Cir. 2000). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

III. DISCUSSION

**A. Defendants' Motion for Summary Judgment**

Defendants argue that Plaintiff is negligent as a matter of law. They rely on Colorado civil jury instruction CJI. Civ. 11:12, which states that "[w]hen a driver of a motor vehicle hits another vehicle in the rear, the law presumes that the driver was negligent." This presumption is rebuttable, however, if the rear driver presents evidence that his negligence was not the cause of the collision. *Bettner v. Boring*, 764 P.2d 829, 833 (Colo. 1988). The rear-end collision jury instruction was derived from the holding in *Iacino v. Brown*, 217 P.2d 266 (Colo. 1950).

Defendants cite to both *Bettner* and *Iacino* in support of their argument. In *Iacino*, the plaintiff was sitting in his car, "properly parked" on the right side of the road on a residential street. The defendant, who admitted to travelling fifteen to twenty miles per hour, struck the plaintiff from behind, and later claimed that mechanical failure of the car was to blame for the accident, not his own negligence. *Iacino*, 217 P.2d at 266. The court stated that "[f]rom the admitted facts, which are that defendant was in control of an automobile which collided with the rear end of plaintiff's automobile without any fault whatever on the part of plaintiff, there is a presumption of negligence sufficient to make a prima facie case." *Id.* at 268. A jury returned a verdict for the plaintiff.

4

Thirty-eight years after *Iacino*, in *Bettner*, the rear-end collision jury instruction was implicated where a driver (Boring) was driving on Interstate 25 near Pueblo, Colorado, under icy and snow packed road conditions. *Bettner*, 764 P.2d at 830-31.  A semi tractor-trailer had overturned on the road, blocking part of the highway, and emergency vehicles were already on the scene. *Id.* at 831. In attempting to avoid the tractor-trailer and other stopped vehicles, Boring grazed another vehicle. He pulled off of the highway and into a field to examine the damage to his own car. *Id.* It was estimated that Boring pulled off into the field approximately twelve to fifteen feet past the ten-foot wide shoulder. *Id.* He returned to his vehicle after inspecting his car and was about to start the car when he was hit from behind by Bettner's vehicle. *Id.* An officer on the scene noted that the entire road was icy and there were other cars in the ditch and median areas that had slid off the road. *Id.* The matter proceeded to trial, and Boring tendered the rear-end collision instruction. *Id.* The trial court declined to give the instruction, noting that the instruction was not applicable "to a vehicle leaving the highway and striking a stationary object, in this case happening to be a car." *Id.* at 831-32. The jury found in favor of Bettner, and Boring appealed. The appeals court reversed. *Id.* at 832. The Supreme Court of Colorado then reversed the appeals court, and held that the trial court did not commit reversible error when it determined that the instruction did not apply.

In its discussion, the *Bettner* court noted that the instruction originated with the *Iacino* case, where the plaintiff's car was "legally parked on the right side of the street" when it was struck. It also noted other cases where the instruction had been applied, usually in cases where "both vehicles involved in the accident were located on the same

side of the road or on the shoulder, were in relatively close proximity, and were facing the same direction." *Id.* at 833.

The court then discussed holdings in other jurisdictions with similar rear-end collision doctrines. In Missouri, a doctrine protects a driver who "has his vehicle in a portion of the highway where he should have it or is entitled to have it" and a driver from behind "overtakes him and permits his vehicle to run into the rear of the one ahead." *Id.*, citing *Doggendorf v. St. Louis Pub. Serv. Co.*, 33 S.W.2d 302, 305 (Mo. App. 1960). In Wisconsin, the supreme court "declined to require use of the rear-end collision instruction every time there is 'a rear-end collision with a stationary vehicle,' [because] the instruction did not always comport with the facts." *Id.*, citing *Millonig v. Bakken*, 334 N.W.2d 80, 86 (Wis. 1983). In Michigan, courts have held that "there is prima facie evidence of negligence if 'a vehicle traveling in a certain direction overtakes and strikes the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway.'" *Id.* at 833-34, citing *Harmon v. Stanley*, 224 N.W.2d 658, 659 (Mich. App. 1974). Based on the collective jurisprudence on this matter, the *Bettner* court held that "we cannot conclude that the rear-end collision instruction is required as a matter of law in all cases, regardless of the circumstances of the collision, solely because the front of one vehicle makes contact with the rear of another vehicle." Rather, they held, the instruction should be limited to cases where "the collision occurred while both vehicles were on the roadway or shoulder, in relatively close proximity, and facing in the same direction." *Id.* at 834.

In examining these elements in light of the facts, the Bettner court noted that Bettner's vehicle was not following Boring's vehicle when the accident occurred. *Id.* at

6

834. Instead, she lost control of the car some distance back and wound up colliding with Boring's vehicle. *Id.* Accordingly, the court stated that "we do not perceive the defendant to have been a 'following motorist' or an 'overtaking vehicle'" within the meaning of the instruction. Because Bettner was not traveling directly behind Boring, "the vehicles were not in close proximity," and the collision was not caused from Bettner following too closely. *Id.* at 834-35, citing *Clevenger v. Walters*, 419 S.W.2d 102, 106 (Mo. 1967) ("[T]his is not the classic case where plaintiff is proceeding directly ahead in his proper lane and defendant runs into the rear end of his vehicle.").

The *Bettner* court noted that "[w]e consider these facts to be significantly different from the typical scenario in which one motorist, driving directly behind another, strikes the rear-end of the vehicle directly in front of it." *Id.* at 835, citing *Grimes v. Haslett*, 641 P.2d 813, 819 (Alaska 1982) ("[W]e have held that '[o]ne should expect sudden stops in heavy traffic, especially when it has recently been stop-and-go' and that to rear-end a car under these circumstances constitutes negligence as a matter of law."). The *Bettner* court noted that the collision between Boring and Bettner was not typical of that which was contemplated by the jury instruction, and "was not caused by Bettner's unsafe following of a vehicle being driven ahead of hers." *Id.* at 835. The court noted additional language from *Clevenger* in Missouri, which stated that:

> We will not review all of the cases involving application of the rear-end collision doctrine nor undertake herein to define exactly what are the permissible outer limits of any deviation permitted from the basic premise of a following and overtaking vehicle which runs into the rear end of the lead or front vehicle which is traveling in the same direction at a place where it has a right to be. This can be determined satisfactorily only on a case by case basis, but we repeat the caveat ...: "It is not recommended that this theory of recovery be employed except where the facts come strictly within the pattern of the typical rear-end collision situation."

*Id.*, citing *Clevenger*, 419 S.W.2d at 107.

In the present case, Defendants claim that since Plaintiff admits that she does not have complete recollection of the events surrounding the accident, she cannot rebut the presumption of negligence against her. Def.'s Motion for Sum. Jud., ECF No. 41, p. 4. They further assert that the police report indicates that the area of the highway was illuminated, the truck's lights were flashing, and that the truck was white in color, and that this suggests that Plaintiff was negligent in the operation of her vehicle because she did not see the truck prior to hitting it. *Id.* Finally, Defendants argue that, under *Iacino*, Plaintiff was in control of her vehicle and Sellers had "properly stopped his vehicle." *Id.* at 5. Under *Bettner*, Defendants argue that both Defendant Seller's truck and Plaintiff's car were on the roadway, in close proximity, and facing the same direction. *Id.* at 6.

Plaintiff argues that issues of fact remain in this case regarding the negligence of the Defendants, and that Sellers did not know or follow the Federal Motor Carrier Regulations on the day of the accident – namely that his truck was stopped in the highway at night, and that he failed to put out traffic triangles or other warning signs for other drivers. Pl.'s Response, ECF No. 45, p. 2-4. She argues that because there are genuine issues of material fact remaining in this matter, the presumption of negligence does not apply. *Id.*

Although Plaintiff argues that only limited discovery had been conducted at the time of filing her response (August 4, 2015), and that therefore, the summary judgment motion was premature, discovery has now been concluded and a final pretrial order

issued.  *See* ECF No. 81.  However, I agree that triable issues of fact remain in this case, precluding a grant of summary judgment.

In *Bettner*, a case relied upon by Defendants, the court cited with favor to a Missouri case which noted that the imposition of a rear-end collision doctrine should be evaluated on a case-by-case basis.  *Bettner*, 764 P.2d at 835, citing *Clevenger*, 419 S.W.2d at 107.  This is because each case requires an examination of the surrounding facts and circumstances.  The *Bettner* court also noted that the doctrine would not be applied every time a rear end collision occurs, but instead would be evaluated only in cases where both parties were on the road, in close proximity, and facing the same direction.  However, in the present case, there remains a triable issue of fact as to whether the parties were in "close proximity," as contemplated by *Bettner*.  *See id.*

Plaintiff argues that Sellers should have pulled over off of the highway instead of stopping in the lane of the highway.  Colorado courts have found that drivers on Colorado highways have a duty to drive with reasonable care, "which may be violated in some circumstances by not pulling over."  *Hesse v. McClintic*, 176 P.3d 759, 760 (Colo. 2008).  In the *Hesse* case, a driver was confronted with big horn sheep crossing the highway in a sixty-five mile per hour zone.  The driver slowed her speed to between ten and thirty miles per hour.  Another driver hit her from behind and claimed that her actions were unreasonable under the circumstances.  She claimed that her actions were reasonable in light of a sudden emergency in the road.  The case went before a jury and the jury found in favor of the driver in front, but also found her 30% negligent, reducing her award accordingly.  The case ultimately went before the Colorado Supreme Court, which held that under the circumstances, the rear driver presented

9

sufficient evidence to the jury that the driver in front acted unreasonably by failing to pull over when confronted by the animals in the road. During trial, the plaintiff agreed that "any time a motorist nearly stops on an interstate highway when other traffic is traveling at sixty-five miles per hour, there is a risk that another driver may come from behind and hit the slower car." *Id.* at 761. The *Hesse* court noted that "[w]e have long held that whether there was an emergency and whether the course of conduct chosen under the circumstances was reasonable are questions of fact to be determined by the trier of fact." *Id.* at 764.

It is at least debatable that Sellers' truck was "properly parked" on the road or that the collision occurred "without any fault whatever" on his part, and whether his actions were reasonable as a commercial trucker under federal and state safety regulations. It is also debatable whether Plaintiff was traveling in close proximity as contemplated by *Bettner* and the jury instruction that Defendants rely upon. Seller's truck was at a complete stop in the highway, in a seventy-five mile per hour zone at night. I make no judgment here about the reasonableness or lack thereof of either driver's actions in this case. I only determine that reasonable minds could differ as to the reasonableness of their actions, and that based on that, Plaintiff has raised sufficient evidence to rebut the presumption at this stage of the case.

### B. Defendants' Motion for Partial Summary Judgment

Defendants argue in the alternative that Plaintiff should be found to be partially negligent as a matter of law. "Whether a person is negligent – that is, whether she breached her duty of care by acting unreasonably under the circumstances – is ordinarily a question of fact for the jury." *Id.* at 764, citing *Metro Gas Repair Serv., Inc.*

*v. Kulik*, 621 P.2d 313, 318 (Colo. 1980).  Likewise, the issue of comparative negligence and the "relative degrees of fault are to be determined by a trier of fact except in the clearest of cases where the facts are undisputed and reasonable minds can draw but one inference."  *Id.*, citing *Gordon v. Benson*, 925 P.2d 775, 777 (Colo. 1996); *see also Hendrickson v. Doyle*, 2015 WL 8533769, at *8 (D. Colo. Dec. 11, 2015) ("Colorado's comparative negligence statute requires the trier of fact to determine the amount of negligence, if any, attributable to the plaintiff."); *Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 847 (10th Cir. 1986) ("[U]nder Colorado's comparative negligence statute . . . the finder of fact must nonetheless apportion the parties' relative fault.").  I find that there are disputed material facts in this case, and that reasonable minds could differ as to the relative negligence of each party, if any.  Such determinations are properly submitted to a jury.

Accordingly, summary judgment in favor of the Defendants must be denied.

IV.    CONCLUSION

The record indicates that with regard to Plaintiff's claims, triable issues of fact exist.  Viewing the evidence in the light most favorable to Plaintiff, I find that she has demonstrated that material issues of fact exist that preclude the entry of summary judgment on Plaintiff's claims in the Defendants' favor.   Additionally, I find that the question of Plaintiff's comparative negligence is an issue of fact which precludes partial summary judgment in favor of the Defendant.  Accordingly, it is

ORDERED that Defendant's Motion for Partial Summary Judgment or Summary Judgment (ECF No. 41) is **DENIED.**

Dated: February 29, 2016

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge